UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

OCT 3 1 2005



CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| REBECCA ROLFES, an individual and all others similarly situated, | * * * | CIV 05-4099 |
| Plaintiff, | * * | |
| -vs- | * * | |
| MBNA AMERICA BANK N.A., an Enterprise affecting interstate commerce; CLIFTON RODENBURG, an individual predicate actor in schemes violating federal laws providing that fraud and extortion are *malum in se* offenses; DONALD W. KALLENBERGER, an individual predicate actor in schemes violating federal laws providing that fraud and extortion are *malum in se* offenses; LEE D. ANDERSON, an individual predicate actor in schemes violating federal laws providing that fraud and extortion are *malum in se* offenses, | * * * * * * * * * * * * * * * | MEMORANDUM OPINION AND ORDER |
| Defendants. | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court are three Motions to Dismiss, docs. 6, 11 and 12, filed by the individual defendants, Clifton Rodenburg ("Rodenburg"), Donald W. Kallenberger ("Kallenberger") and Lee D. Anderson ("Anderson"). In the alternative, Rodenburg and Kallenberger request an Order for a more definite statement. (Docs. 6 and 12.) For the following reasons, the Complaint in this case will be dismissed.

## BACKGROUND

Proceeding *pro se*, Plaintiff alleges Defendants are liable to her for violating the Racketeer Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-1968. The claims are based on alleged civil violations of § 1962 purportedly committed during the process of collecting a debt owed by Plaintiff to defendant MBNA America Bank, N.A. ("MBNA").[1] The Court was able to garner the following facts from the confusing Complaint, doc. 1, and from another document submitted by Plaintiff entitled, "Evidence of Fraud Declaratory Judgment." (Docs. 1, 9.)

Plaintiff resides in Mitchell, South Dakota. MBNA is a company that issued a credit card to Plaintiff. Defendant Lee Anderson is a state circuit court judge for the First Circuit Court of South Dakota located in Mitchell, South Dakota. Defendant Clifton Rodenburg is a lawyer in Fargo, North Dakota, and Donald Kallenberger is a lawyer in Eureka, South Dakota. The individual defendants are sued in their individual capacities.

On October 9, 2003, the National Arbitration Forum awarded MBNA $7,744.99 against Plaintiff. (Doc. 9, Attachment B, Exhibit A.) In August 2004, MBNA, represented by Clifton Rodenburg, filed a Complaint against Plaintiff in the First Circuit Court in Mitchell, South Dakota. Rodenburg is a non-resident attorney and it appears that Donald Kallenberger acted as local counsel for MBNA.[2] The allegations in MBNA's Complaint against Rolfes were:

1.  By way of contract and use of a credit card issued by MBNA America, defendant [Rolfes] became bound by the terms of the MBNA America Cardmember Agreement.
2.  The defendant [Rolfes] defaulted on her credit card payments.

---

[1] MBNA has not made an appearance in this case, and it does not appear that MBNA has been properly served with a summons and complaint.

[2] Section 16-18-2 of the South Dakota Codified Laws provides that nonresident attorneys like Rodenburg may participate in a case in this state, "provided a resident practicing attorney of this state, a member of the State Bar of South Dakota, is actually employed and associated and personally participates with such nonresident attorney. . . ." SDCL § 16-18-2. The resident attorney, Kallenberger in this case, is commonly referred to as "local counsel."

3.   The Cardmember Agreement provided that matters arising thereunder be arbitrated by the National Arbitration Forum (NAF).

4.   The plaintiff filed its claim against the defendant [Rolfes] with the NAF, the matter proceeded forward, and an arbitration award was issued in favor of the plaintiff in the amount of $7,744.99 on October 9, 2003. A copy of the award is attached as Exhibit A.

WHEREFORE, plaintiff demands judgment against the defendant for $7,744.99, interest, and costs.

(Doc. 9, Attachment B.) Judge Anderson presided over the state court action against Plaintiff. According to Plaintiff, Judge Anderson entered Summary Judgment in favor of MBNA on May 24, 2005. (Doc. 9, p. 4.)

Plaintiff asserts that the defendants are engaged in a "debt collection fraud racket." According to Plaintiff, MBNA misled her regarding the terms of her credit card agreement and falsely represented that it was authorized to issue credit when, in fact, it was not. Plaintiff contends that the other defendants "helped" MBNA defraud Plaintiff by failing to validate the debt in violation of the Fair Debt Collection Practice Act ("FDCPA"). Without stating the amount of damages she sustained, Plaintiff claims treble damages under 18 U.S.C. § 1964(c) against each of the defendants, along with a $200,000 penalty.

Contending that the Complaint fails to state a claim upon which relief may be granted, the individual defendants seek dismissal of this action pursuant to Rule 12(b)(6). Anderson's motion is based on judicial immunity. The motions of Rodenburg and Kallenberger are based on Plaintiff's failure to allege facts sufficient to sustain a civil RICO Act claim.

## DISCUSSION

In considering a motion to dismiss, the Court must assume all facts alleged in the complaint are true, *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994), and the complaint is to be viewed in the light most favorable to the non-moving party, *Frey v. Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). "A motion to dismiss should be granted as a practical matter ... only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some

3

insuperable bar to relief." *Id.* (citations and quotation marks omitted). The Court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Plaintiff alleges that defendant Anderson participated in the fraudulent scheme by granting summary judgment in favor of MBNA. This claim is based solely on Anderson's actions taken in his capacity as a judicial officer in South Dakota's Unified Judicial System. Anderson is entitled to absolute immunity from Plaintiff's claims for monetary damages because Plaintiff's claims involve judicial actions which were not "taken in the complete absence of all jurisdiction." *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). The Motion to Dismiss will be granted as to defendant Anderson.

RICO grants a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) ("civil RICO"). Section 1962 makes it unlawful, *inter alia,* (1) to use "income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt," in the operation of any enterprise whose activities affect interstate commerce, 18 U.S.C. § 1962(a); or (2) to acquire an interest in an enterprise through a pattern of racketeering activity or through collection of an unlawful debt, 18 U.S.C. § 1962(b); or (3) to participate, as a person employed by or associated with an enterprise whose activities affect interstate commerce, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt, 18 U.S.C. § 1962(c); or (4) to conspire to violate the foregoing provisions, 18 U.S.C. § 1962(d). "[E]nterprise" is defined to "include[ ] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[R]acketeering activity" is defined to mean any of a number of specified acts that would constitute certain state or federal crimes, *id.* § 1961(1); and a "pattern of racketeering activity" is defined to require at least two acts of racketeering activity within a ten-year period, *id.* § 1961(5). "[U]nlawful debt" is defined, in pertinent part, as follows:

> 'unlawful debt' means a debt (A) ... which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to

usury, and (B) which was incurred in connection with ... the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

*Id.* § 1961(6).

As Defendants point out, it is not clear what provision of § 1962 Plaintiff is alleging was violated in this case.   It is clear, however, that Plaintiff has failed to state a civil RICO claim for collection of an unlawful debt.   As set forth above, an unlawful debt is defined as a debt which is unenforceable because of state or federal usury laws.[3]  *Id.* § 1961(6).   In this case, there are no allegations that a usurious interest rate was charged.   Consequently, there is no civil RICO claim for collection of unlawful debt.   The Court next will address each section of the civil RICO statute and determine whether Plaintiff has properly averred any other RICO violation.

"[T]o bring a claim under 18 U.S.C. § 1962(a), a plaintiff must allege an injury from the use or investment of the racketeering income that is separate and distinct from injuries allegedly caused by the defendant's engaging in the predicate acts." *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 896 (8th Cir. 1999).   In *Fogie*, the Eighth Circuit held that the district court properly dismissed a claim brought under § 1962(a) for lack of standing under Rule 12(b)(6) because "plaintiffs have not and apparently cannot allege an injury from a use or investment distinct or separate from the predicate acts they allege." *Id.*  Plaintiff has not alleged any facts in the Complaint or in her other pleadings to show that she sustained an injury arising out of the defendants' use or investment of racketeering income.   Accordingly, Plaintiff has failed to state a claim under 18 U.S.C. § 1962(a). Likewise, Plaintiff has failed to state a claim under § 1962(b), which prohibits a person from acquiring an interest in an enterprise through a pattern of racketeering activity, because she has not alleged any facts indicating that a defendant obtained an interest in an enterprise through racketeering.  *Cf. Information Exchange Sys., Inc. v. First Bank Nat'l Ass'n*, 994 F.2d 478 (8th

---

[3]Unlawful debts also include debts which are incurred in connection with gambling activities, but that is not an issue in this case because there are no allegations that any of the defendants were attempting to collect debts incurred in gambling activities.

Cir.1993) (affirming the trial court's dismissal of the § 1962(b) claim even though the plaintiffs alleged that defendants took over his business because the plaintiff failed "to demonstrate both the requisite predicate acts and the requisite relatedness of those acts.").

Defendants believe that Plaintiff is attempting to assert a violation of 18 U.S.C. § 1962(c), and the Court agrees. "To state a claim under § 1962(c), a plaintiff must establish: (1) the existence of an enterprise; (2) conduct by the defendants in association with the enterprise; (3) the defendants' participation in at least two predicate acts of racketeering; and (4) conduct that constitutes a pattern of racketeering activity." *In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.,* 340 F.3d 749, 767 (8th Cir.2003). Defendants Rodenburg and Kallenberger assert as grounds for dismissal that there is no "enterprise," that they did not "conduct" any enterprise, that there is no "pattern" of racketeering activity, and that there are no "predicate acts" supporting the RICO claim. The Court will address each of the elements in turn.

Enterprise

"An enterprise, as contemplated by RICO, has three essential characteristics: A common or shared purpose, some continuity of structure and personnel, and an ascertainable structure distinct from that inherent in a pattern of racketeering." *McDonough v. Nat'l Home Ins. Co.,* 108 F.3d 174, 177 (8th Cir. 1997). A common or shared purpose is self-explanatory. Continuity of structure has been defined by the Eighth Circuit as "an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an *ad hoc* basis." *United States v. Kragness,* 830 F.2d 842, 856 (8th Cir. 1987). The third characteristic of a RICO enterprise, an ascertainable structure distinct from that inherent in a pattern of racketeering, has been described by the Eighth Circuit:

> Th[e] distinct structure might be demonstrated by proof that a group engaged in a diverse pattern of crimes or that it has an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes. The command system of a Mafia family is an example of this type of structure as is the hierarchy, planning, and division of profits within a prostitution ring.

6

*Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 770 (quoting *United States v. Bledsoe*, 674 F.2d 647, 665 (8th Cir.1982)). Thus, the "focus of the inquiry" on this characteristic is "whether the enterprise encompasses more than what is necessary to commit the predicate RICO offense." *Id.* The enterprise must be more than "an instance of a sporadic and temporary criminal alliance to commit one of the enumerated RICO crimes." *Id.* (quoting *United States v. Lemm*, 680 F.2d 1193, 1201 (8th Cir. 1982)).

In her Complaint, Plaintiff asserts that she has established that an enterprise exists because MBNA is an enterprise and she has named it as a defendant. Plaintiff has missed the mark regarding the definition of "enterprise" under RICO. She has not alleged any continuity of structure or any sort of organizational structure separate from the alleged pattern of racketeering. The only activities of the alleged enterprise were those of the purported racketeering scheme to defraud Plaintiff. Plaintiff's failure to plead the existence of an enterprise as contemplated by RICO is fatal to her claim. *See McDonough*, 108 F.3d at 177.

Conduct in Association with Enterprise

In defining conduct in association with the enterprise, the Eighth Circuit has relied on instruction from the Supreme Court in *Reves v. Ernst & Young*, 507 U.S. 170 (1993):

> *Reves* addressed the requisite degree of participation in the conduct of the affairs of the enterprise to impose liability under RICO. In *Reves*, a partner in the defendant accounting firm was placed in charge of the audits of Co-op gasohol plant. The accountant relied on existing Co-op records in preparing the audits, reviewed a series of completed Co-op transactions, certified the Co-op's records as fairly portraying its financial status, and presented the reports to the Co-op's directors and shareholders. The Supreme Court affirmed the test articulated in *Bennett v. Berg* and held "one must participate in the operation or management of the enterprise itself" to be subject to liability under section 1962(c). Applying this test to the defendant's conduct in the enterprise, the Court concluded it was not sufficient to impose liability.

*Nolte v. Pearson*, 994 F.2d 1311, 1317 (8th Cir. 1993) (internal citations omitted) (music company's law firm which prepared allegedly false opinion letters and informational memoranda regarding

music recording leasing program information did not participate in operation or management of enterprise).

In the present case, Plaintiff alleges that defendant Anderson's role was presiding over the debt collection action against Plaintiff in state court, and entering summary judgment in favor of MBNA. Even if it could be found that MBNA was a RICO "enterprise" as Plaintiff alleges, there is no allegation that Anderson had any part in the operation or management of MBNA or any other "enterprise." Plaintiff's allegations regarding Anderson's conduct in the enterprise are deficient. Plaintiff also has not alleged that defendants Rodenburg or Kallenberger "took some part in directing [MBNA's] affairs." *See Reves*, 507 U.S. at 179. At most, Plaintiff's averments indicate the existence of a business relationship between MBNA and Rodenburg and Kallenberger. Rodenburg represented MBNA as its attorney in the civil action against Plaintiff to collect the money she owed MBNA, and Kallenberger acted as local counsel. "[F]urnishing a client with ordinary professional assistance, even when the client happens to be a RICO enterprise, will not normally rise to the level of participation sufficient to satisfy the Supreme Court's pronouncements in *Reves*." *Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997) (plaintiff stated civil RICO claim against law firm because complaint specifically alleged the firm had taken the lead in "making important decisions concerning the operation of the enterprise"). "[A] growing number of courts, including [the Eighth Circuit] have held that an attorney or other professional does not conduct an enterprise's affairs through run-of-the-mill provision of professional services." *Id.* Plaintiff has failed to plead sufficient facts to meet the *Reves* "operation or management" test for participating in the conduct of the affairs of the enterprise.

Predicate Acts and Pattern of Racketeering

The Court will address the remaining elements of a RICO claim notwithstanding the Court's conclusion that the Plaintiff's allegations are deficient as to the "enterprise" and "conduct" elements. These last two elements are addressed together because they are interrelated. As indicated earlier, to prevail under RICO, a plaintiff must demonstrate that a defendant committed acts of racketeering activity, also known as predicate acts. The Act defines a "pattern" as requiring at least two predicate

acts within a ten-year period. 18 U.S.C. § 1961(5); *Manion v. Freund*, 967 F.2d 1183, 1185 (8th Cir. 1992).

In *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989), the Court held that, in order to prove a pattern of racketeering activity, "a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239. Relatedness requires that the "criminal acts . . . have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 239-40. Continuity refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. To satisfy the continuity element, a plaintiff must show that "the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." *Id.* at 240. There is no specific time period needed to establish continuity. The Eighth Circuit has held that a period of over three years was sufficient, *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 994 (8th Cir. 1989), but a single transaction, with only one victim, taking place over a short period of time, does not constitute a pattern of racketeering. *Terry A. Lambert Plumbing v. Western Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991).

Here, Plaintiff alleges that defendant MBNA misrepresented the terms of her credit card agreement. Then, with the assistance of defendant Kallenberger, defendant Rodenburg filed a lawsuit in state court falsely claiming that Plaintiff was indebted to MBNA. To complete the alleged "scam," defendant Anderson entered summary judgment in favor of MBNA. Even if Plaintiff is able to prove these allegations, they reveal, at most, a plan to defraud a single credit card holder in connection with one credit card agreement, taking place over a short period of time. Plaintiff, therefore, has failed to establish a pattern of racketeering.

It is important to note that the Eighth Circuit has rejected attempts to convert ordinary civil disputes into RICO cases. *See, e.g, Lambert Plumbing*, 934 F.2d 976, 981 (8th Cir. 1991) (holding that a bank's failure to extend credit under a line of credit when a customer is in default under other

9

loans from the bank is not indicative of a RICO pattern because "[b]ankers to not become racketeers by acting like bankers"). In *Lambert*, the Eighth Circuit adopted the reasoning of the Fourth Circuit: "If the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO claim. If we were to recognize a RICO claim based on the narrow fraud alleged here, the pattern requirement would be rendered meaningless." *Id.* at 981 (quoting *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 685 (4th Cir. 1989)). Mere allegations that MBNA, its attorneys and the presiding judge defrauded Plaintiff in the course of collecting a debt cannot raise this single attempt to collect a debt to the level of a federal RICO violation. *Cf. Atlas Pile Driving*, 886 F.2d at 990 ("The major purpose behind RICO is to curb the infiltration of legitimate business organizations by racketeers.") No more than ordinary or garden variety fraud claims are involved in this case. That becomes very clear from a review of Plaintiff's pleading entitled "Evidence of Fraud Declaratory Judgment," wherein Plaintiff alleges defendants have committed fraud, "including fraud on the contract, fraudulent conveyance, concealment of material facts, fraud in the execution, fraud in the inducement, forgery, and conspiracy to commit fraud." (Doc. 9, p. 1.) These types of fraud claims are better prosecuted under state law.

Finally, section 1962(d) of the civil RICO statute makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]." 18 U.S.C. § 1962(d). A civil RICO conspiracy claim under 18 U.S.C. § 1962(d) cannot survive if, as here, the plaintiff has failed to allege the requisite substantive elements of RICO. *See Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941, 954 (8th Cir. 1999) (affirming dismissal of civil RICO conspiracy claim by employees of pharmaceutical company who alleged that company and others conspired to market products in unlawful manner by promoting off-label uses because employees did not sustain injury caused by a RICO predicate act). If Plaintiff is claiming defendants violated § 1962(d), that claim must be dismissed because she has failed to allege a RICO predicate act, as set forth earlier in this Memorandum Opinion. Accordingly,

IT IS ORDERED:

1.     That Defendants' Motions to Dismiss, Docs. 6, 11 and 12, are granted and all claims in this case are dismissed against all Defendants with prejudice.

2.     That Defendants' Motions for a More Definite Statement, Docs. 6 and 12, are denied as moot.

3.     That Plaintiff's Motions to Compel, for Default Judgment, for Summary Judgment and for Judgment on the Pleadings are denied as moot. (Docs. 21, 22 and 28.)

4.     That Defendant Anderson's Motion for Summary Judgment, Doc. 23, is granted.

5.     That Plaintiff's request for Declaratory Judgment is denied as moot.

Dated this 31st day of October, 2005.

BY THE COURT:

Lawrence L. Piersol
Chief Judge

ATTEST:
JOSEPH HAAS, CLERK

BY_____
DEPUTY

11